IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY B. O'BRIEN LLC,

      Plaintiff,

 v.                  OPINION & ORDER

DAVID KNOTT and           18-cv-684-jdp
EMRACE WELLNESS LLC,

      Defendants.

---

  Plaintiff Timothy B. O'Brien LLC owns a vitamin and nutrition store called Apple Wellness. O'Brien alleges that a former employee, defendant David Knott formed Embrace Wellness LLC to open a competing store that infringes Apple Wellness's trade dress and copyrights. With the complaint, O'Brien filed a motion for preliminary injunction. Dkt. 2.

  Defendants did not file a response to the motion for preliminary injunction. Instead, defendants filed a motion to disqualify O'Brien's counsel, Kramer, Elkins & Watt, LLC (KEW), contending that the firm cannot represent O'Brien because the firm had previously represented Knott. Dkt. 16.

  The core issue is whether KEW's representation of Knott involved matters that are substantially related to the current suit. Based on the court's review of the communications between Knott and attorney Jessica M. Kramer at KEW, the court concludes that Kramer did only a few hours of work for Knott and the work was not substantially related to this litigation. Most important: Kramer expressly declined to represent Knott on a potential retaliation claim against O'Brien. The court will not take the extreme measure of disqualifying KEW.

BACKGROUND FACTS

In a two-page motion, defendants allege that KEW provided legal counsel to Knott regarding the initial set-up of Embrace Wellness LLC and that the "representation also included counsel regarding unemployment and retaliation claims that Knott had and was considering bringing against Plaintiff Apple Wellness." Dkt. 16, at 2. The support for those allegations is a short declaration by Knott. Dkt. 17. The declaration cites a July 4, 2017, retention letter, but the retention letter itself is not provided. The declaration also states that the representation included legal counsel about "potential retaliation claims against Timothy B. O'Brien LLC."

O'Brien provided a thorough response that included an affidavit from attorney Kramer, which attached all the written communication between KEW and Knott as well as KEW's bill to Knott. Dkt. 21. In reply, defendants complain that Kramer has breached her duty of confidentiality by disclosing these communications to the court. *Id.* at 2. But in filing the motion to disqualify KEW, Knott disclosed information about his communication with Kramer that would otherwise have been privileged and confidential, and thus he has waived his right to maintain the confidentiality of that information. Under Federal Rule of Evidence 502(a), Knott's waiver extends to other undisclosed communication or information that concerns the same subject matter or that ought in fairness to be considered with the disclosed information. Knott cannot seek to disqualify KEW and then use the duty of confidentiality to prevent Kramer from defending herself. Defendants do not dispute the accuracy of Kramer's affidavit or the attached documents, nor do they contend that Kramer's evidence is incomplete in any material way. Dkt. 26. Neither side has asked for a hearing, so the court will accept the facts as presented in Kramer's affidavit and its attachments.

Kramer was the only attorney at KEW to communicate with or work for Knott, and with the exception of one phone call, the communication between Knott and Kramer was by email. Knott first contacted Kramer on June 28, 2017, to review a commercial retail lease that Knott planned to sign for Embrace Wellness. Dkt. 21-1. Kramer advised that it would take three to four hours to review the lease, and she offered to refer Knott to someone else if he needed the work done sooner than a couple of weeks. Dkt. 21-2. Knott asked Kramer whether she could limit her representation to about two hours because the lease was "boilerplate," Dkt. 21-3. Kramer agreed. Dkt. 21-4. Knott expressed his gratitude and explained that his personal circumstances were extremely difficult. Dkt. 21-5.

While discussing the terms of representation, Knott also raised two other issues: (1) he was concerned that creating an LLC would interfere with his unemployment benefits; and (2) that he was considering a claim against a prior employer for terminating him in retaliation for filing a wage claim. Dkt. 21-3. Regarding the retaliation claim, Knott wrote:

> I may have other work for you on this topic, as I was retaliated against by termination after filing of a wage claim (Wis. S. 103.455) which is a direct violation of Wis. S. 111.31-111.395(2m). That case is back under investigator review after I compiled a response (turned in 6/27) to the Respondents defense. I feel it's pretty well under control, but could see fit for your services here.

Dkt. 21-3, at 1.

Kramer responded by explaining to Knott that registering an LLC would not affect his unemployment benefits, and Kramer advised Knott to register the LLC and execute the commercial lease in the LLC's name. But regarding the retaliation claim, Kramer asked for the name of Knott's former employer to conduct a conflict check. Dkt. 21-4. At that point, on June

3

30, Kramer summarized their agreement, which was that she would cap fees on the lease review to two hours, and she would wait to hear from Knott on the employment work.

A couple of hours later Knott emailed Kramer that his former employer was Apple Wellness, and that a DWD investigator was contacting individuals willing to provide evidence on Knott's behalf. Dkt. 21-5, at 2.

Kramer responded by email on July 4 to Knott. Dkt. 21-6. A formal engagement letter was, apparently, attached to the email, but neither side has provided that to the court. However, the email itself contains Kramer's response regarding the potential retaliation claim:

> As for your case against Apple Wellness, I must decline possible representation on that, as Tim O'Brien is a business acquaintance of mine, and I regularly represent small employers in the area, and I feel it would be best that you have other representation for that matter, should you need it. I highly recommend the Hawks Quindel law firm; they exclusively represent employees in all types of cases against employers.

*Id*. Knott acknowledged that Kramer had declined to represent him on the retaliation claim:

> Regarding Apple Wellness retaliation case, I can respect your decision in this matter, and thank you for the referral should I need to reach out to them.

Dkt. 21-7, at 1.

On July 7, Kramer and Knott discussed the lease by telephone, and Kramer emailed a detailed list of concerns with the lease to Knott's real estate agent. In total, over the course of ten days, KEW worked a bit less than four hours for Knott and billed Knott for two hours. Dkt. 21-9. Kramer did no work on the retaliation issue.

4

ANALYSIS

A motion to disqualify counsel is a serious matter that requires the court to balance two competing interests. On one hand, the former client—Knott in this case—has a legitimate interest in making sure that his confidences are preserved and not used against him. On the other hand, the opposing party—O'Brien here—has a right to counsel of its choosing. In balancing these interests, the court must make sure that the rules of professional ethics are not used as a weapon for tactical advantage, because granting a motion to disqualify counsel imposes an immediate and severe burden on the disqualified attorney and her client. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 518 (7th Cir. 2017) (citing *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir. 1977)). The decision to grant a motion to disqualify is within the court's discretion, guided by these principles. *Id*.

This court's authority to regulate lawyer conduct in its own cases comes from its inherent power, not from a particular state rules of professional conduct. *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 741 F. Supp. 2d 970, 981 (W.D. Wis. 2010) (citing *In re Snyder*, 472 U.S. 634, 645 (1985)). The court will typically look to state rules or model rules for guidance, but unless the district court has adopted the rules of the state in which it sits, the state rules of professional conduct do not directly govern conduct in federal court. *See Watkins*, 869 F.3d at 519. This court has not formally adopted Wisconsin's rules of professional conduct, but in this case, it is appropriate to start by evaluating KEW's conduct under Wisconsin's rules of professional because those rules governed KEW's initial representation of Knott.[1]

---

[1] Under federal precedent, the standard for disqualification of an attorney who undertakes litigation against a former client is the "substantial relationship" test. *LaSalle Nat. Bank v. Lake Cty.*, 703 F.2d 252, 255 (7th Cir. 1983). Under that test, the ultimate question is whether the former representation is substantially related to the current litigation, such that the former client might have disclosed confidential information related to the litigation. In the final

5

The applicable rules are SCR 20:1.9, concerning duties to former clients, and SCR 20:1.18, concerning duties to prospective clients. For purposes of this motion, the essential point of Rule 1.9 is that an attorney cannot represent a party adverse to a former client in the same or substantially related matter if the attorney had acquired from the former client confidential information that is material to the current matter. Rule 1.18 has two essential points for our purposes. First, an attorney cannot use information from a prospective client against that prospective client, even if no representation ensues. And second, an attorney who has acquired information from a prospective client cannot represent an adverse party in the same or substantially related matter if the disclosed information could be substantially harmful to the prospective client.

In this case, Knott is something of a hybrid. He is a former client of KEW with respect to the lease review and the formation of Embrace Wellness. But he was also a prospective client with respect to the retaliation claim. The court will consider these aspects of KEW's relationship separately.

As for the former client relationship, the court is not convinced that there is any substantial relationship between this litigation and Kramer's advice on the lease and the formation of Embrace Wellness. Defendants make no effort to explain how the lease review has any relationship to this case. And defendants offer only the conclusory assertion that Kramer's advice about the formation of Embrace Wellness is related to this case because it is the entity that O'Brien is trying to shut down. Defendants' main argument is that Knott's former employment by O'Brien is how he was able to "copy" O'Brien's intellectual property.

---

analysis, the result would be the same under either the Wisconsin Rules of Professional Conduct or the substantial relationship test.

But that basic information is completely within O'Brien's knowledge regardless of KEW's representation of Knott. Kramer's work on the lease review and her advice on the formation of Embrace Wellness is not substantially related to this litigation, and it provides no basis to conclude that Kramer breached any professional duty to Knott.

The prospective client relationship is only marginally more significant. Kramer was clear from the beginning that she would need to know the name of Knott's former employer before she could represent Knott on the retaliation claim. And once Knott disclosed that the employer was O'Brien, Kramer declined to represent him in that matter. So the question is whether Kramer acquired information from Knott about the retaliation that would be significantly harmful to Knott in this litigation.

The case filed by O'Brien is an intellectual property claim against a competitor, albeit one who happens to be a former employee. So at the time KEW undertook to represent O'Brien, KEW would not have known that the case had anything to do with Knott's potential retaliation claim, which would be only a permissive counterclaim. *See* Fed. R. Civ. P. 13(a) (a counterclaim is compulsory only if it arises out of the same transaction or occurrence). It would be hard to fault KEW for taking on a case that it reasonably believed had nothing to do with a matter on which it had expressly declined to represent Knott.

But let's assume that KEW should have anticipated that Knott might bring a counterclaim for retaliation. Even then Rule 1.18 would not preclude KEW's representation of O'Brien unless Kramer had learned information from Knott that would be significantly harmful to him. Defendants have not pointed to any such harmful information. Nor can they. Knott disclosed to Kramer that had already made claims against Apple Wellness; and the claims were being investigated by the DWD (Department of Workforce Development). Knott disclosed

7

nothing to Kramer that would not have already been disclosed to the DWD and known to Apple Wellness.

The court concludes that defendants have failed to establish that Kramer, or anyone at KEW, breached any professional duty to Knott. Knott asked Kramer to work on discrete, limited matters, and he hectored her into limiting the time she spent on that work. Kramer was clear about what work she would undertake, and what work she declined. There is always a risk that a client will be upset when his former attorney appears on the other side of a case, so a matter adverse to a former client should be undertaken with the utmost care. But in this case it would be grotesquely unfair to allow defendants to use Knott's limited engagement to disqualify KEW from representing O'Brien.

ORDER

IT IS ORDERED that Defendants David Knott and Embrace Wellness LLC's motion to disqualify plaintiff's counsel, Dkt. 16, is DENIED.

Entered September 27, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge