IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY B. O'BRIEN LLC,

      Plaintiff,

 v.               OPINION and ORDER

DAVID KNOTT and          18-cv-684-jdp
EMRACE WELLNESS LLC,

      Defendants.

---

  Plaintiff Timothy B. O'Brien LLC owns a vitamin store called Apple Wellness. The company's owners are Timothy and Becki O'Brien, so for simplicity the court will refer to the plaintiff business as Apple Wellness, and it will refer to the O'Briens by their names.

  Defendant David Knott is a former employee of Apple Wellness. He opened a competing store called Embrace Wellness, which Apple Wellness contends infringes its trademark and trade dress. Apple Wellness has filed a motion for preliminary injunction, asking the court to enjoin Embrace Wellness from using its trade dress and a trademark, requiring Embrace Wellness to change its logo, redesign the interior of its store, and cease using sales techniques similar to those used by Apple Wellness. Dkt. 2.

  The court held an evidentiary hearing on October 22, 2018. The court concludes that Apple Wellness has not shown a likelihood of success on the merits or that it would face irreparable harm without an injunction.

# FINDINGS OF FACT

Based on the parties' written submissions and the evidence presented at the hearing, the court finds the following facts.

Timothy and Becki O'Brien are members of Timothy B. O'Brien LLC, which owns and operates Apple Wellness, a vitamin store with two locations in the Madison area. David Knott was an employee at Apple Wellness for about three years. At some point, Apple Wellness asked all its employees to sign noncompete agreements, but Knott refused. In early 2017, Apple Wellness terminated Knott after a contentious dispute in which Knott contented he was owed back wages and the O'Briens accused Knott of doctoring his timesheets.

A few months later, Knott formed Embrace Wellness LLC and opened a competing vitamin store called Embrace Wellness. Knott's store is also in Madison, and the interior decor closely resembles that of the Apple Wellness stores. Knott built simple shelves and cabinets of light-colored wood with a clear finish, nearly identical to the shelves and cabinets used at Apple Wellness. He put stock photos of attractive, happy people on the upper doors of the cabinets along the walls of the store, just as at Apple Wellness. He chose an open, unfinished ceiling painted a dark color, similar to the ceiling treatment at Apple Wellness. He had the walls painted a bright, saturated color, and used wood-look hard flooring, also somewhat similar to Apple Wellness. Like Apple Wellness, Embrace Wellness has a children's play area, and it plays the Christian Life 102.5 radio station. There are some differences: Embrace Wellness's walls are blue, whereas Apple Wellness's are green; the wood-look floor at Embrace Wellness is darker than Apple Wellness's; the lighting and hardware fixtures are different. Nevertheless, the overall impression leaves no doubt that Knott copied the look and style of the interior of the Apple Wellness stores.

Apple Wellness's decor was motivated in significant part by economic and functional considerations. The open, unfinished ceiling was cheaper than a finished ceiling; wood-look flooring was cheaper than alternative hard-surface options. The simple, frameless shelves and cabinets are cheaper than more elaborate styles. Becki O'Brien testified that she had looked at many vitamin stores, and that she wanted Apple Wellness to have a distinctive look. She explained how her individual design choices were intended to make the Apple Wellness store look home-like and energetic and to present healthy atmosphere consistent with the O'Briens' Christian values.

Knott also adopted several of Apple Wellness's sales practices. Knott adopted the customer referral program in which store business cards can be passed along and redeemed for discounts, and he adopted the practice of holding regular, store-wide 20 percent off sales. And, like Apple Wellness, Knott also advertises his store through Facebook posts that feature images of the store's interior.

The Embrace Wellness logo adopts a significant element of a logo that Apple Wellness created and began using in late 2015. The two logos are shown below:

 

The word portions of the two logos are different. But the mountain elements are similar in the configuration of the three peaks and in the style of rendering. Apple Wellness used the logo

primarily on employee uniforms, and sometimes as part of a tagline on email and social media communications. Embrace Wellness uses its logo more consistently, and it is on a large sign on the exterior of the Embrace Wellness store. After Embrace Wellness opened, Apple Wellness stopped using the mountain logo because out of concern that continued use would suggest some association with Embrace Wellness.

Apple Wellness presented the testimony of two of its customers, Anna Thompson and Kris Koenig. Thompson saw the Embrace Wellness store through its Facebook page; Koenig visited the store itself. Both thought that the Embrace Wellness store looked like an Apple Wellness store, which they reported to the O'Briens. But neither Thompson nor Koenig were actually confused that Embrace Wellness was affiliated with Apple Wellness, and neither of them purchased anything from Embrace Wellness.

ANALYSIS

The standard applicable to Apple Wellness's motion is well-established. To obtain a preliminary injunction, a plaintiff must show that (1) it will suffer irreparable harm before the final resolution of its claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) its claims have some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If the plaintiff makes this showing, it must then demonstrate that the balance of harms tips in its favor. *Id*. The court weighs these factors using a sliding-scale approach: "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Kraft Foods Grp. Brands LLC v.*

*Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013) (quoting *Abbot Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

**A. Likelihood of success on the merits**

Apple Wellness brings claims for unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1)(A), contending that defendants (1) infringed its trade dress by copying the interior design and sales practices of Apple Wellness; and (2) infringed its mountain trademark by adopting a similar mountain logo. To prevail on these claims, Apple Wellness must show that (1) the asserted trade dress and trademark are protectable, and (2) defendants' use of the trade dress and mark is likely to cause confusion among consumers. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

**1. Protectable trade dress**

The court begins with the trade dress claim. Trade dress refers to the design of a product, or the packaging of a product or service, that is used as a source identifier. *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017). The decor of a retail store can serve as trade dress, if the decor is distinctive enough to work as a source identifier. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). But the functional elements of would-be trade dress— anything that adds value to a product other than source identification—are not protectable. *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 339 (7th Cir. 1998).

So Apple Wellness's trade dress is protectable only if it can show that it is distinctive and non-functional, which means that consumers would identify the source of Apple Wellness's service from the trade dress. *Computer Care v. Serv. Sys. Enterprises, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992). Trade dress can be inherently distinctive, or it can acquire distinctiveness if,

over time, customers associate the trade dress with the source of the product. *Two Pesos*, 505 U.S. at 769.

Apple Wellness contends that its trade dress is inherently distinctive. Apple Wellness is correct that trade dress in the form of the decor of a retail store *can* be inherently distinctive, as the Supreme Court held in *Two Pesos.* But Apple Wellness has to show that its decor is in fact distinctive. Distinctiveness lies on a spectrum—arbitrary or suggestive trade dress is at one end of the spectrum, while generic or descriptive trade dress lies at the other. To receive protection under the Lanham Act, the trade dress must be arbitrary or suggestive rather than generic or descriptive. *Computer Care*, 982 F.2d at 1069

Apple Wellness contends that its trade dress is combination of arbitrary elements, including walls painted a bright color; light-colored wood shelves with a notch at the bottom; cabinets along the perimeter of the store that include posters with stock photos of happy people; an industrial-style ceiling painted a dark color; hardwood-style floors; a children's play area; a radio playing Christian Life 102.5; and specific store promotions and customer discounts. The court agrees that Knott adopted most, if not all, of these elements from Apple Wellness. But for several reasons it finds that these elements do not constitute a protectable trade dress.

First, none of the individual elements of the Apple Wellness decor are unusual. Industrial ceilings, simple frameless shelving, and stock photos of happy people are ubiquitous among retail outlets. The only somewhat unusual element of Apple Wellness's interior design is that it has green-colored walls, but color alone cannot be an inherently distinctive source-identifier. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000).

Second, the elements of Apple Wellness's trade dress are functional. An element is functional if it affects the cost or quality of a product, or if its exclusive use would put competitors at a significant non-reputation-related disadvantage. *Arlington Specialties*, 847 F.3d at 419. This is the case for any interior design elements that were chosen because of cost. The ceiling, flooring, and furniture were all selected in part because they were cheaper than alternatives.

Even aesthetic aspects of the Apple Wellness decor are functional. Becki O'Brien testified that she designed Apple Wellness to make customers feel welcome and to encourage them to buy more products. To summarize, the wood floors create a "homey" atmosphere; the bright-colored walls make customers feel happy and energetic; the posters of healthy people make customers want to buy products so they can be healthy too; the play area encourages parents to come to the store and lets them shop without distraction; and the Christian music is uplifting and free of "dirty" lyrics. In other words, "customers care about those features for reasons other than source identification: the features 'affect[] the . . . quality of the article.'" *Arlington Specialties*, 847 F.3d at 420 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.10 (1982)). That is "the very definition of a functional feature." *Id.*

Third, Apple Wellness's assertion of trade dress protection for sales techniques raises a concern with price competition. The court rejects Embrace Wellness's overbroad contention that trademark rights cannot be used to restrain price competition. Dkt. 32, at 8. That is too simplistic a paraphrase of the holding in *United States v. Sealy, Inc.*, 388 U.S. 350, 356 (1967). But price competition is functional, and it would put Embrace Wellness at a significant competitive disadvantage if the court prohibited it from offering periodic store-wide 20 percent discounts. The court might be somewhat more sympathetic to a claim based on the business

7

card discount technique, but Apple Wellness has not argued that that technique is distinctive and non-functional. *See, e.g., Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982) (analyzing the distinctiveness of a sales and marketing technique involving the "adoption" of dolls).

In sum, the court is not persuaded that Apple Wellness's asserted trade dress is distinctive, and thus the court is not persuaded that it is protectable. The court recognizes that it should judge the trade dress as a whole, but that analysis is informed by an evaluation of the individual elements. Apple Wellness did not submit evidence of the decor of other vitamin stores, so that the court could evaluate the Apple Wellness decor as a whole in comparison to other vitamin retail outlets.

The O'Briens' resentment at Knott's copying of Apple Wellness's decor and business methods is understandable. But based on the evidence before the court at this preliminary point, Apple Wellness is not likely to succeed in showing that its alleged trade dress is distinctive enough to be protected.

2. **Protectable trademark**

The court agrees that Apple Wellness had a protectable trademark when it adopted the mountain logo and used it on employee uniforms. But Apple Wellness may have abandoned the mountain logo. Under the Lanham Act, a trademark is abandoned "when its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Apple Wellness's intention not to resume use of its logo unless Embrace Wellness is enjoined from using a similar logo is evidence of abandonment. *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (plaintiff that stopped using trademark while litigation was pending no longer had protectable interest in the trademark).

8

But the court need not decide at this point whether Apple Wellness has abandoned its mountain logo. As explained below, this claim fails because Apple Wellness has not presented evidence that customers are likely to be confused by defendants' use of the mountain logo.

### 3. Likelihood of confusion

To succeed on its claims, Apple Wellness must also show that Embrace Wellness use of the alleged trade dress and trademark is likely to cause customer confusion. In this circuit, the likelihood of confusion analysis considers seven factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. *Packman*, 267 F.3d at 643.

Based on the evidence presented so far, the court will assume that Apple Wellness can make at least a moderate showing on most of these factors, with the following exceptions. The court is not at all persuaded that Apple Wellness has strong trade dress, for reasons already explained. The court is not persuaded that the two mountain logos are closely similar, because the mountain logos include other elements that may adequately distinguish the two trademarks. And the court is not persuaded that Apple Wellness has adduced any evidence of actual consumer confusion.

Thompson and Koenig, the two Apple Wellness customers, both thought that the decor of the Embrace Wellness store was similar to that of Apple Wellness. But neither of them was actually confused that Embrace Wellness was an Apple Wellness store, or that Embrace Wellness was actually affiliated with Apple Wellness. To the contrary, Koenig testified that she told Knott that she disapproved of Knott's attempt to copy Apple Wellness. This shows that

she knew that the stores were not affiliated. Thompson and Koenig clearly agree with the O'Briens' view of this case, but their testimony does not show any incidents of actual consumer confusion.

In sum, the court concludes that Apple Wellness is not likely to succeed on its claim for infringement of trade dress. Its prospects for success on its trademark claim are somewhat better, but still not especially strong.

**B. Irreparable harm and the balance of hardship**

Because Apple Wellness has not established a strong likelihood of success on the merits, it must establish not only that it faces irreparable harm, but also that the balance of harms tips strongly in its favor.

Apple Wellness has not adduced any evidence that it has suffered, or will suffer, any harm as a result of Embrace Wellness's use of the alleged trade dress or trademark. Apple Wellness instead relies on the notion that any violation of the Lanham Act creates a presumption of irreparable harm, even if no loss of business is shown. *See e.g. Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). But this notion has been cast into doubt by the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), which held that for injunctive relief in patent cases, irreparable harm is not presumed but must be proven. In *eBay*, the court reasoned that the Patent Act provided no exception from the traditional requirement that a plaintiff must show evidence of irreparable harm before securing an injunction. *Id.* at 391–92.

The Lanham Act, like the Patent Act, does not include any exception from the traditional standards for injunctive relief. On the contrary, it states that injunctive relief is granted "according to the principles of equity." 15 U.S.C. § 1116(a). So although the court of

10

appeals for the Seventh Circuit has not yet addressed the issue, it seems likely that *eBay* would apply with equal force to trademark cases. Decisions from the Third and Ninth Circuits have held that it does. *See Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205 (3d Cir. 2014). And no circuit has gone the other way.

Apple Wellness alleges that it faces a risk of harm to its reputation and loss of goodwill, but it has not presented any evidence to support that allegation. Apple Wellness has not shown that defendants' product is inferior to Apple Wellness's. Nor has it shown that the alleged infringement caused it to lose any business. The court would assume that Embrace Wellness might capture some of the vitamin market in the Madison area, market share that Apple Wellness might otherwise retain. But Apple Wellness has not shown that any loss of business would be attributable to Embrace Wellness's use of Apple Wellness's trademark or trade dress. And ordinary competition is not an actionable injury under the Lanham Act.

Even if the court were to assume that any injury under the Lanham Act is irreparable, Apple Wellness would still need to show that the harm it faces outweighs the harm that an injunction would impose on Embrace Wellness. The cost of an injunction to Embrace Wellness would be significant: it would have to remodel the store, destroy items with the Embrace Wellness logo, and replace the sign on the exterior of the store. Given Apple Wellness's meager showing of potential injury, the balance of harms tips against Apple Wellness.

ORDER

IT IS ORDERED that plaintiff Timothy B. O'Brien LLC's motion for preliminary injunction, Dkt. 2, is DENIED.

Entered October 29, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge